**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| KING RANGE, | ) | |
| *Plaintiff* | ) | **Civ. No. 14-cv-02447 (LAK)** |
| v. | ) | |
| | ) | **ECF CASE** |
| | ) | |
| | ) | |
| 480-486 BROADWAY, LLC, *et. al.* | ) | |
| *Defendants* | | |
| | | |
| ———————————————— | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR
RECONSIDERATION OF THE COURT'S SEPTEMBER 26, 2014 ORDER GRANTING
DEFENDANTS' APPLICATION TO STAY THE PROCEEDINGS**

PARKER HANSKI LLC

Glen H. Parker
Adam S. Hanski
Robert G. Hanski
40 Worth Street, 10th Floor
New York, NY  10013
(212) 248-7400

*Attorneys for Plaintiff King Range*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

FACTUAL BACKGROUND ................................................................................................. 2

LEGAL ARGUMENT............................................................................................................ 7

I.          MOTION FOR RECONSIDERATION.................................................................... 7

II.         STAY OF PROCEEDINGS .................................................................................... 8

CONCLUSION...................................................................................................................... 14

# TABLE OF AUTHORITIES

<u>**Cases**</u>                                                                                    <u>**Page(s)**</u>

*Ackerman v. Ackerman,*
    920 F. Supp. 2d 473 (S.D.N.Y. 2013) ................................................................7

*FR 8 Singapore Pte. Ltd. v. Albacore Maritime Inc.,*
    794 F. Supp. 2d 449 (S.D.N.Y. 2011) ................................................................7

*Gropper v. Fine Arts Housing, Inc. and Nobu Associates, L.P. d/b/a Nobu,*
    2014 U.S. Dist. LEXIS 66229 (S.D.N.Y., Apr. 3, 2014).....................................4

In re Houbigant,
    914 F.Supp., 997 (S.D.N.Y.1996) ......................................................................7

Landis v. North American Co.,
    299 U.S. 248, 255(1936)) ...................................................................................9

*Louis Vuitton Malletier S.A., v. LY USA, Inc.,*
    676 F.3d 83 (2d Cir. 2012) .................................................................................8

*Virgin Atlantic Airways v. Nat'l Mediation Bd.,*
    956 F.2d 1245 (2d Cir. 1992) .............................................................................7

*Walsh v. McGee,*
    918 F.Supp. 107 (S.D.N.Y.1996) .......................................................................7

<u>Rules</u>

S.D.N.Y. Local Civil Rule 6.3 .....................................................................................1

<u>**Statutes**</u>

Americans with Disabilities Act, *42 U.S.C. §12181* .....................................................3
Americans with Disabilities Act Accessibility Guidelines, 28 C.F.R. Part 36, Subpart D ..............1
Americans with Disabilities Act Accessibility Guidelines, 28 C.F.R. Part 36, Appendix D ...........1

<u>**Other Authorities**</u>

Transcript of Proceedings Before Hon. Lewis A. Kaplan at 2:6-9, King Range v. 480-486
Broadway, LLC, Madewell Inc. And J. Crew Group, Inc.; 14 CV 02447 (LAK), (S.D.N.Y.
September, 24, 2014) ......................................................................................................4

## PRELIMINARY STATEMENT

Plaintiff respectfully submits this memorandum of law in support of his motion for reconsideration of this Court's September 26, 2014 Minute Entry Order staying this action (the "**Stay Order**"). Set forth herein are "the matters or controlling decisions herein which counsel believes the Court has overlooked" in granting a stay of this proceeding. *S.D.N.Y. Local Civ. R.6.3 (Effective Sept. 03, 2013)*.

Plaintiff respectfully seeks reconsideration of the Stay Order for a several reasons: First, the analysis underlying the Stay Order was not based on the legal standard governing a district court's grant of a stay of proceedings.  Second, the factual analysis underlying the Stay Order was not, *in fact*, premised on any facts, or admissible evidence, before the Court.  Instead, the Stay Order was based on the unsworn, uncorroborated, and contested testimony of defendants' attorneys, Joel L. Finger and Eric D. Witkin ("**Finger & Witkin**"). The Stay Order was based on defendants' attorneys Finger & Witkin's testimony that defendants were "in the process of correcting" all violations of the *Americans with Disabilities Act Accessibility Guidelines, 28 C.F.R. Part 36, Appendix D ("1991 Standards"), and the amendments thereto, 28 C.F.R. Part 36, Subpart D ("2010 Standards", together with the 1991 Standards, the "ADA Design Standards"*) at defendants' two places of public accommodation. *Transcript of Proceedings Before Hon. Lewis A. Kaplan at 2:6-9, King Range v. 480-486 Broadway, LLC, Madewell Inc. And J. Crew Group, Inc.; 14 CV 02447 (LAK), (S.D.N.Y. September, 24, 2014) ("Transcript")*[1] Third, even had the analysis underlying the Stay Order had been based on a) the correct legal standard put before the court in defendants' application and b) truthful testimony from defendants' attorneys Finger & Witkin as to the facts in support of defendants' application,

---

[1] Attached hereto as "**Exhibit 1**" is a true and correct copy of the hearing transcript for the September 24 Status Conference.

a stay of this action would be manifestly unjust.[2]

## FACTUAL BACKGROUND[3]

### I.  The Parties & Premises

The three defendants in this action own, lease, and/or operate two different and physically separate places of public accommodation located at 486 Broadway in New York County, New York ("486 Broadway")[4].  Defendant 480-486 Broadway, LLC owns the 486 Broadway property containing the two buildings in which the places of public accommodation at issue in this litigation are located: the Madewell clothing store at the 486 Broadway building address, and the J.Crew clothing store at the 484 Broadway building address. Defendant J. Crew Group,  Inc.owns and operates the J.Crew store; Defendant Madewell, Inc. owns and operates the Madewell store[5].

Plaintiff desired and desires to access and patronize the Madewell and J.Crew stores, but defendants bar him from doing so because he is disabled[6]. Defendants bar plaintiff as neither the Madewell store nor the J.Crew store are accessible as required by the ADA Design Standards.  Unlike non-disabled individuals, defendants purposely bar the disabled from the Madewell and the J.Crew stores as they have steps at each store's entrance:  defendants altered the previously accessible street-level entrance to the J.Crew store and installed steps at the entrance; and defendants ignored their obligations under the Americans with Disabilities Act,

---

[2] Plaintiff notes that defendants made their unscheduled application to stay this action at the September 24 Status Conference.  Plaintiff had no advance notice of defendants' motion, nor was he afforded the opportunity to brief the issue or present plaintiff's opposition to defendants' stay application.
[3] Plaintiff incorporates by reference all allegations made in his Complaint as if fully set forth herein.
[4] Pursuant to the NYC Department of City Planning, 486 Broadway contains two buildings which have the following addresses 484 Broadway and 486 Broadway.  **See Exhibit 2.**
[5] Defendants 480-486 Broadway, LLC, J. Crew Group,  Inc. and Madewell, Inc. are hereinafter collectively referred to as "**defendants**").
[6] Plaintiff has medical conditions that inhibit him from walking and restricts his range of motion and movement. As a result he uses a wheelchair for mobility.

*42 U.S.C. §12181 et. seq.* ("**ADA**") by unlawfully maintaining steps at the entrance level to the Madewell store despite extensively altering the Madewell Store's premises.

The stepped entrances at each of the Madewell and J.Crew stores are not the only architectural and design barriers created that make both stores inaccessible to plaintiff. Plaintiff's initial review of the Madewell and J.Crew stores found approximately thirty (30) violations of the ADA Design Standards at each store. As a result of defendants' discrimination against him, on April 8, 2014, plaintiff filed this action to defend his civil rights as protected by the ADA[7] and have this court compel the defendants to cease discriminating against him.

## II.  Prior Proceedings & Defendants' Misrepresentations

After an initial conference before this Court on June 19, 2014, and an unsuccessful settlement conference with the parties before Magistrate Judge Gorenstein, on August 8, 2014, this Court held a status conference on September 24, 2014 ("**Sept. 24 Status Conference**"). At the Sept. 24 Status Conference defendants orally applied to this court for a stay of this action, and the Court granted defendants' application in its Stay Order.  Other than ordering this "[a]ction stayed for 2 years", the Stay Order does not articulate any legal or factual bases for the decision to stay this action.  The transcript for the Sept. 24 Status Conference, however, details the legal and factual considerations given by the Court in its decision to stay this action.

---

[7] Plaintiff's complaint also contains causes of action due to defendants' disability discrimination pursuant to analogous New York State and New York City Anti-Discrimination laws; namely New York State Executive Law § 296, New York State Civil Rights Law, § 40, and the Administrative Code of the City New York § 8-107. Quite critically, the implementing regulations for Title III of the ADA provide that the "remedies, rights, and procedures of any other Federal, State, or local laws (including State common law) that provide greater or equal protection for the rights of individuals with disabilities or individuals associated with them" are not invalidated or limited by the ADA. *28 C.F.R. § 36.103.*  For purposes of this motion, violations of the aforementioned state and local laws are incorporated into plaintiff's references of violations of the ADA and the ADA Design Standards.

As for the legal principle underlying the decision to stay this action, the court utilized the sole legal authority presented by defendants in support of their motion to stay: a recent decision by the Honorable Denise L. *Cote* in *Gropper v. Fine Arts Housing, Inc. and Nobu Associates, L.P. d/b/a Nobu 2014 U.S. Dist. LEXIS 66229 (S.D.N.Y., Apr. 3, 2014).*

> THE COURT:  The defendant applied for a stay of this action citing, among other things, Judge Cote's decision in Gropper v. Fine Arts Housing, 2014 U.S.Dist.LEXIS 46455, decided earlier this year.

*Transcript at 2:2-6.*

Turning to the factual findings that substantiated defendants' need for, and the basis of, a stay of this action, the Court accepted the entire unsworn, uncorroborated, and contested testimony of defendants' attorneys Finger & Witkin as genuine fact:

> The defendant has assured the Court that to whatever extent there is any lack of compliance on the subject premises, they are in the process of correcting it to the extent it is within their power to do so.

*Id. at 2:6-9.*

In addition to noting that defendants' assurances that they would correct all the inaccessibility issues they believed needed correction as the prime factual basis for the stay, the Court referred to specific actions that defendants' would take to make the J.Crew Store accessible as additional reasons for the stay.  The Court explained that although defendants admit the entrance to the J.Crew Store at 484 Broadway is not accessible, it accepted defendants' excuse for violating the ADA Design Standards:  The restrictions imposed upon the defendants by the New York City Landmarks Preservation Commission ("**LPC**").  *Id. at 2:14-16*

> "The defendant has previously sought permission to make the necessary authorizations [alterations] and it was ***rejected***".

*Id. at 2:16-17 (emphasis added).*  The Court then highlighted defendants' representations that they would now reapply to the LPC for permission install a ramp at the entrance to the J.Crew Store at 484 Broadway and that they would also provide a portable

4

ramp at 484 Broadway "to deal with the problem on an interim basis", as a reason for staying

the proceedings. *Id. at 2:20.*    The court then declared that "given what remains at issue in

this case" – without enumerating what remained, or what no longer was, at issue  – "and given

the defendants' assurances" that they will now fully comply with the law – without specifying

what law or laws defendants' would now comply with, or how defendants would comply -   "it

makes very little sense to run up legal fees and expert fees that are reasonably likely to be

utterly without ultimate purpose, and I am not having it".  *Id. at 2:24-25, 3:2-3.*


### III. Defendants' Misrepresentations Corrected

Unfortunately defendants' attorneys Finger & Witkin's testimony as to the facts at issue –

past, present, and future, cannot be believed.  This can be seen by looking at defendants' specific

representations at the Sept. 24 Status Conference. Firstly, the testimony of defendants' attorneys Finger

& Witkin that the LPC ***rejected*** defendants' prior attempt to make the J.Crew Store entrance

accessible is fiction, not fact. The reality is that the defendants ***abandoned*** their prior

application, and information available from the LPC makes this crystal clear.

On October 23, 2009, the LPC notified defendants that they never provided

information requested by the LPC, that the ramp application remained incomplete for over

sixty days, and that unless defendants provided the requested information within thirty

working days, "the application would be withdrawn".[8] *LPC letter re 484 Broadway Ramp*

*Application, dated October 23, 2009.*  Then on November 30, 2009 the LPC issued a Notice of

Withdrawal to defendants because the defendants did not provide the requested information,

and thus abandoned their application.[9]

---

[8] Attached hereto as "**Exhibit 3**" is a true and correct copy of the October 23, 2009 LPC Letter.  Based on the
LPC March 17, 2009 hearing date for the ramp application, the defendants' application had remained incomplete
for over 220 days.
[9] Attached hereto as "**Exhibit 4**" is a true and correct copy of the November 30, 2009 LPC Letter.

Defendants promise to provide a portable ramp at 484 Broadway "to deal with the problem on an interim basis", is also a red herring.  Temporary ramps are not accessible, or safe. And the elevated floor area above the steps does not provide plaintiff with the necessary clear floor space to enter the store using the temporary ramp.  Even if such ramps were accessible and safe, because the door to the J.Crew Store is set back from the street, plaintiff could have no way to notify the store's employees that he wanted access.

Although the Court accepted all the testimony of defendants' attorneys Finger & Witkin as fact, the court did not give credence to any of plaintiff's allegations, or to plaintiff's representations at the Sept. 24 Status Conference. A review of plaintiff's complaint and representations to this court demonstrates that what remains at issue in this case is exactly what caused plaintiff to file this action: <u>defendants' continuing unlawful discrimination against plaintiff due to their creation and continued maintenance of multiple design and architectural barriers in violation of the ADA</u>.

Plaintiff's complaint details defendants' unlawful discrimination against him by noting the numerous violations of the ADA Design Standards at defendants' two places of public accommodation, the J.Crew Store and the Madewell Store. Plaintiff's complaint also lists approximately 30 violations of the ADA Design Standards at *each* store.  Defendants deny discriminating or that they violated the ADA Design Standard.  In their Answer Defendants essentially deny violating any of the accessibility laws, and also provide twenty-two affirmative defenses for any inaccessibility at their places of public accommodation.

Despite plaintiff and defendants competing claims and statements evidencing the numerous issues to be litigated, the Court accepted defendants' denials and answers as fact.[10]

---

[10] Plaintiff also notes that defendants' application for a Stay of this Action, and the stay granted by this court, are actually the following: a disguised motion to dismiss plaintiff's complaint, and a grant of the disguised motion to dismiss.

A review of the Sept. 24 Status Conference Transcript shows that defendants' application to stay this action was granted because defendants: a) orally claimed that they applied for permission to correct an accessibility violation at the entrance to *one* of the two places of public accommodation at issue in this litigation; and 2) represented that to the extent they do admit to any other accessibility violations, they would correct them.

## LEGAL ARGUMENT

### I.   MOTION FOR RECONSIDERATION

A motion for reconsideration pursuant to S.D.N.Y. Local Civil Rule 6.3, is proper when "the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *FR 8 Singapore Pte. Ltd. v. Albacore Mar. Inc.*, 794 F. Supp. 2d 449, 451 (S.D.N.Y. 2011) (quoting *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)).  When a party seeking reconsideration shows that the court "overlooked the controlling decisions or factual matters" placed before it, the court should rule in favor of reconsideration. *Ackerman v. Ackerman, 920 F. Supp. 2d 473 (S.D.N.Y. 2013)*(citing *Walsh v. McGee, 918 F.Supp. 107, 110 (S.D.N.Y.1996); In re Houbigant, 914 F.Supp. 997, 1001 (S.D.N.Y.1996)).*

Reconsideration is also proper when the movant can show "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.*" Virgin Atlantic Airways v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992) (citing 18 C. Wright, A. Miller & E. Cooper, Federal Practice & Procedure § 4478 at 790)).*

The standards governing reconsideration are strictly applied in order to "avoid repetitive arguments on issues that have been considered *fully* by the Court."

*McGee*, 918 F.Supp. 107, 110 (S.D.N.Y.1996)(emphasis added). When the movant meets the reconsideration standard, reconsideration should be granted. *FR 8 Singapore Pte. Ltd.*, 794 F. Supp. 2d at 451; *Virgin Atlantic Airways, 956 F.2d at 1255.*

Plaintiff respectfully submits that in granting defendants' motion to stay the proceedings, the Court overlooked the controlling legal s t a n d a r d governing the grant of a stay, as well as the particular factual matters of this action that definitively weigh against a stay. Moreover, even if the court did apply the correct legal standard, its grant of a stay would have been based on defendants' material fabrications of, or unjustifiable suppositions from the "facts" presented by defendants. As such, plaintiff seeks reconsideration due to controlling decisions and facts overlooked by the court, as well as to correct an error of law and manifest injustice.

Under the reconsideration standard, it is clear that the Order staying these proceedings should be vacated and the stay immediately lifted. Plaintiff respectfully requests that the Court vacate the stay, and issue a scheduling order so that plaintiff can prosecute this action so that defendants will stop violating the ADA by unlawfully barring plaintiff, and the disabled generally, from their places of public accommodation due to disability.

## II.  STAY OF PROCEEDINGS

### A Court's Power to Stay Proceedings

It is well settled that a court has the ability to stay proceedings as part of a court's authority "to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants". *Gropper v. Fine Arts Housing, Inc. and Nobu Associates, L.P. d/b/a Nobu 2014 U.S. Dist. LEXIS 66229 (S.D.N.Y., Apr. 3, 2014), at *1 (S.D.N.Y.) (quoting Louis Vuitton Malletier S.A., v. LY USA, Inc., 676 F.3d 83, 96 (2d Cir.*

*2012) and Landis v. North American Co., 299 U.S. 248, 255(1936)).* Noting that a stay request "is an appeal to equity", the Second Circuit advised the "exercise of judgment" to weigh and maintain an even balance between the competing interests at stake before a court stays an action. *Louis Vuitton Malletier S.A., v. LY USA, Inc., 676 F.3d 83, 97 (2d Cir. 2012) (quoting Landis 299 U.S. 254-55).*

### The Moving Party's Burden of Proof

*Gropper* relied extensively on the analysis in *Louis Vuitton* and *Landis* which recognized that the equities of the matter weigh heavily on a decision to stay a proceeding. Because the issue of equity and fairness looms large, the courts placed the burden of persuasion as to the necessity for a stay on the party seeking the stay.[11]  *Louis Vuitton, 676 F.3d at 97, (citing Clinton v. Jones, 520 U.S. 681, 708 (1997).* In order to meet its burden of proof, the movant must show that they will suffer "undue prejudice" or "interference with [its] constitutional rights"; otherwise, "there is no reason why plaintiff should be delayed in its efforts to diligently proceed to sustain its claim". *Louis Vuitton, 676 F.3d at 97 (quoting Hicks v. City of N.Y., 268 F.Supp.2d 238, 241 (E.D.N.Y.2003)).* As such, if there is a chance that staying an action will work damage to someone else, the party seeking the stay "**must** make out a clear case of hardship or inequity in being required to go forward" with the litigation. *Landis 299 U.S. at 255 (emphasis added).*

The defendants in *Louis Vuitton* sought a stay, because they were simultaneously the defendants in a related criminal proceeding. *Louis Vuitton, 676 F.3d at 87.* In *Louis Vuitton*

---

[11] Defendants have not, and cannot, meet the burden of proof showing that a stay of this action is necessary. Defendants have presented no evidence to show that a stay of this action is necessary - Other than the unsworn testimony of defendants' counsel that defendants' require a stay of this action - which involves **two** completely separate places of public accommodation - because they just applied to the NYC Landmarks Preservation Commission to install a ramp at the entrance to **one** of the two places of public accommodation at issue.

the issue before the Second Circuit was the propriety of staying a civil proceeding because of a related criminal proceeding. *Louis Vuitton, 676 F.3d at 87.* In other words, the court was determining whether the "extraordinary remedy" of staying the action was appropriate when one of the parties in the civil proceeding (who was also a party in the related criminal proceeding) sought a stay of the civil case to prevent any undue prejudice to, or interference with, its constitutional rights in the criminal case. *Louis Vuitton, 676 F.3d at 98.*

### The Balancing Tests

Faced with concerns of life and liberty to a party involved in separate but related civil and criminal proceedings on the one hand, and the delay of justice that would be imposed on that party's opponent in the civil litigation, in the Second Circuit recognized that district courts within the circuit were using "a six-factor balancing test" to determine when the "extraordinary remedy" of a stay was warranted. *Louis Vuitton, 676 F.3d at 97.*

In *Gropper,* Judge Cote recognized that some of the *Louis Vuitton* balancing test factors were inapplicable to a stay determination in a civil proceeding where the issues posed by a related criminal proceeding were not present. *Gropper at 2.* Recognizing a five-factor balancing test noted in *Louis Vuitton* as more appropriate for the *Gropper* situation, Judge Cote applied the following five-factor balancing test to decide whether a stay should be granted:[12] :

> (1) the private interests of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiffs if delayed; (2) the private interests of and burden on the defendants; (3) the interests of the courts; (4) the interests of persons not parties to the civil litigation; and (5) the public interest.

---

[12] The issues in Gropper, however, shared some similarities to the issues involved in Civil Proceeding/Related Criminal Case as the Gropper defendants were also defending a related Department of Justice Investigation, so the defendants in Gropper could at least make a facially plausible argument that they would face prejudicial/injustice issues by proceeding with the civil action while the DOJ Investigation was ongoing. The defendants here, however, cannot.

*Gropper at 2* (citing *Louis Vuitton, 676 F.3d at 99 n.13).*  Judge Cote also emphasized the Second Circuit's guidance that a court's stay decision must be based on a very particularized inquiry as to the specific circumstances and competing interests before the court.  *Gropper at 2* (citing *Louis Vuitton, 676 F.3d at 99.)*[13]

### Defendants' Failed to Meet their Burden of Proof

The proponent of a stay bears the burden of persuasion to prove the necessity of a stay, and that the movant must show that they will suffer "undue prejudice" or "interference with [its] constitutional rights" before a stay can be granted, and the there is no reason why plaintiff should be delayed in its efforts to diligently proceed to sustain its claim".  It is crucial to note that even in the context of related Civil and Criminal Proceedings with its constitutional implications, and the life and liberty of the party seeking a stay at risk, controlling precedent describe a stay of proceedings as an "extraordinary remedy".

The defendants herein have not met their burden to show that continuing this action will unduly prejudice them or interfere with their constitutional rights.  Being required to litigate while they purportedly have an application pending to correct one entrance to only one of the two stores at issue in this litigation in no way prejudices defendants.  Assuming defendants did apply in good faith, it was defendants' choice to apply for a ramp while this litigation is ongoing.  It would be bad precedent to allow a party to claim that their voluntary decision to apply to some third-party or government agency for an approvals made a stay of an ongoing action necessary.  (And this litigation in no way prejudices defendants; in fact, but for

---

[13] "These tests, however, no matter how carefully refined, can do no more than act as a rough guide for the district court as it exercises its discretion. They are not mechanical devices for churning out correct results in overlapping civil and federal proceedings, replacing the district court's studied judgment as to whether the civil action should be stayed based on the particular facts before it and the extent to which such a stay would work a hardship, inequity, or injustice to a party, the public or the court." *Louis Vuitton, 676 F.3d at 99.*

this litigation defendants would never have reapplied to the LPC for a ramp.)  If anything, defendants' abandonment of their 2009 LPC Ramp application and their continued refusal to make the J.Crew Store accessible, after they themselves made it inaccessible, shows that it is plaintiff and other individual with disabilities that will be harmed by a stay if this action; particularly as doing so will allow defendants to continue violating the rights of plaintiff and others with disabilities with impunity, and deny plaintiff the ability to enforce his rights pursuant to the ADA.

**The Balancing Test Definitively Weighs Against A Stay**

Every one of the five factors utilized in *Gropper* lead to one conclusion – a stay of this action is not warranted.

> *Factor One: The private interests of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiffs if delayed.*

The disabled plaintiff is currently being denied access to defendants' places of public accommodation in violation of his civil rights.  Defendants' purported application to the LPC will not change the harm to plaintiff.  This is because defendants' purported LPC application is for a ramp at the J.Crew Store entrance.  But even assuming that defendants actually proceed with their application, and install a ramp, the ramp will only correct one of the accessibility violations at the J.Crew Store - each and every other accessibility violation in the J.Crew store will still remain.  Also defendants did not claim to file an application to ramp the entrance to the Madewell store.  So the entirety of the Madewell store still will remain inaccessible.

As a result, the accessibility violations will remain and each and every minute that the defendants deny him access, he is discriminated against and harmed. Unless plaintiff is allowed to prosecute this action have the defendants compelled to provide him with the access

they are lawfully required to provide, plaintiff will suffer continuing harm.

### Factor Two: The private interests of and burden on the defendants.

The defendants are public accommodations and are subject to the laws covering public accommodations, including the ADA.  Defendants cannot claim that they have a right to discriminate in violation of the ADA. Nor can they claim that plaintiff's suit against them for their refusal to comply with the ADA and the ADA Design Standards places an undue burden on them because they now make non-binding vague statements that they will comply.  If defendants want this litigation stopped the way to do so is to comply with the law, and move to dismiss plaintiff's claims as moot.

### Factor Three:  The interests of the courts.

It is also in the court's interest to have this action proceed expeditiously.  Allowing these defendants to continue violating the law, will only lead to more violations by the defendants, and others.  Because they can receive a stay of an action against them, the defendants will now discount the cost to them from being taken to court due to the likelihood that a court will not allow their opponent to prosecute its action against them.  As such, defendants and others will be incentivized to violate the law, as the court will remove or stay any consequences of doing so, and without requiring them to adjudicate the issues.

### Factors Four & Five: The interests of persons not parties to the civil litigation, and the public interest.

Plaintiff filed this action to stop defendants from discriminating against him because of disability as defendants were not voluntarily complying with the law.  Furthermore, there was no other action pending that would force defendants to stop discriminating. Allowing this case

to continue will directly benefit numerous other individuals with disabilities whose rights are being violated on a continuing basis and would not otherwise be protected.  And it is not merely the disabled who benefit, but their families and friends too, as they also suffer the effects of defendants discrimination. In addition, allowing the litigation to continue tells individuals with disabilities that the courts will uphold the laws enacted for the benefit of individuals with disabilities, and will not deny them the access to justice.

Regarding the public interest, plaintiff respectfully refers this court to the findings and purposes noted in §12101 of the ADA.  42 U.S.C. §1210.

## CONCLUSION

The facts and circumstances of this matter, as applied to the legal standards governing a stay of proceeding, do not warrant the extraordinary remedy of a stay of these proceedings.  Accordingly, evidence the Court should grant reconsideration and vacate the stay of this Action.

Dated:  New York, New York
          October 10, 2014

                              Respectfully  Submitted,

                              PARKER HANSKI LLC

                              By:___/s_____
                                 Glen H. Parker
                                 Adam S. Hanski
                                 Robert G. Hanski